UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABDOULAYE BAH,

Plaintiff,

-against-

MICHAEL'S STORES, INC.,

Defendant.

24-CV-10015 (RFT)

**OPINION & ORDER**

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Plaintiff Abdoulaye Bah brought a claim for breach of a bailment contract against Defendant Michael's Stores, Inc. in the Supreme Court of the State of New York, New York County. (*See generally* ECF 1-1, Compl.) Defendant removed the case to this Court, which has diversity jurisdiction over this claim. (*See generally* ECF 1, Not. of Removal.) Pending before the Court is Defendant's motion for partial summary judgment, which seeks to limit Defendant's liability under the terms of the bailment contract (the "Motion"). (*See* ECF 21, Def.'s Mot. for Partial Summary Judgment (Def.'s MSJ).) For the following reasons, the Motion is **DENIED**.

## I.

## BACKGROUND[1]

### A. Factual Background

On March 12, 2019, Plaintiff brought 47 pieces of artwork to one of Defendant's retail locations in the Bronx ("Store No. 1296") to be custom framed. (*See* ECF 22-1, Def.'s Rule 56.1

1 The facts are drawn from the exhibit attached to Defendant's Motion (ECF 21-1, Pl.'s Receipts and Damage and Return Policy ("Receipts and Policy")), which is duplicative of exhibits filed by Plaintiff with his Complaint but in a more legible format, and Defendant's Rule 56.1 Statement of Material Facts (ECF 22-1).

Statement ¶ 2.) Plaintiff received receipts from Defendant for each of the pieces of art that he left with Defendant. (*See* ECF 22-1, Def.'s Rule 56.1 Statement ¶ 3.) Each receipt contains a provision regarding Defendant's damage and return policy (the "Provision"), which states:

> **Damage and Return Policy:**
> Michaels Stores, Inc.s [sic] total liability for any loss or damage to a customers [sic] property shall not exceed $250, and Michaels Stores, Inc. shall have no liability for any property left over 60 days from today. All returns will be processed based upon the original payment method. If the order is cancelled the same day, a full refund will be issued. Refunds on orders cancelled after the original order date are limited to unprocessed custom components only.

(ECF 21-1, Receipts and Policy at 2.)

Store No. 1296 closed and remains closed. (ECF 22-1, Def.'s Rule 56.1 Statement, ¶ 4.) Plaintiff's artwork has not been located to date.(ECF 22-1, Def.'s Rule 56.1 Statement, ¶ 5.)

**B. Procedural History**

On November 18, 2024, Plaintiff filed a complaint in the Supreme Court of the State of New York, New York County, bringing a single claim for breach of a bailment contract against Defendant, alleging that Defendant is liable to Plaintiff for $300,000 plus interest for the fair market value of the missing artwork. (*See* ECF 1-1, Compl. ¶¶ 26-31.) On December 4, 2024, Plaintiff served Defendant with a copy of the summons and Complaint. (*See* ECF 1-2, Dec. 4, 2024 Aff. of Service.) On December 30, 2024, Defendant removed the action to this Court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). (*See* ECF 1, Not. of Removal.) The same day, Defendant filed its answer. (*See* ECF 4, Def.'s Answer.)

On January 3, 2025, the parties filed a Notice of Consent and Reference, consenting to my jurisdiction. (*See* ECF 6, Notice of Consent and Ref.) On February 21, 2025, The Honorable Judge Lewis J. Liman ordered the referral of this case to my jurisdiction. (*See* ECF 7, Order.)

On September 8, 2025, Defendant filed this Motion, requesting that the Court enforce the Provision on Plaintiff's receipts that would limit Defendant's liability to $250 per invoice. (*See* ECF 21, Def.'s MSJ; ECF 22, Def.'s Not. of Mot. for Partial Summary Judgment.) On September 29, 2025, Plaintiff filed his opposition. (*See* ECF 24, Pl.'s Opposition To Mot. for Partial Summary Judgement (Pl.'s MSJ Opp.).) On October 6, 2025, Defendant filed its reply in further support of its Motion. (*See* ECF 25, Def.'s Mot. for Partial Summary Judgement Reply (Def.'s MSJ Repl.).)

## II.

## LEGAL STANDARDS

### A. Motions for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed," and the court must draw "all justifiable inferences" in favor of the nonmoving party. *Id.* at 255.

---

[2] Unless otherwise indicated, this opinion and order omits internal quotation marks, citations, and alterations from quoted text.

Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247-48).

Once the moving party has shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial," *Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986); "[t]he nonmoving party may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

**B. Contract Interpretation Under New York Law**

Under New York law,[3] "courts interpret a contract so as to give effect to all of its provisions and cannot and should not accept an interpretation that ignores the interplay of the

[3] Both parties briefed this motion applying New York law. (*See* ECF 21, Def.'s MSJ; ECF 24, Pl.'s MSJ Opp.) "Because the parties do not dispute that New York law applies to [this] claim[], the Court assumes for the purposes of this motion that New York law governs." *Grain D'Or LLC v. Wizman*, No. 21-CV-10652 (LJL), 2023 WL 5609101, at *11 (S.D.N.Y. Aug. 30, 2023). *See also Alphonse Hotel Corporation v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) ("The parties' briefs

terms, renders certain terms inoperable, and creates a conflict where one need not exist." *Net2Globe Inter., Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 445 (S.D.N.Y. 2003). "The words and phrases in a contract should be given their plain meaning." *Olin Corp. v. American Home Assur. Co.*, 704 F. 3d 89, 99 (2d Cir. 2012).

**C. Limitations of Liability for Negligence and Gross Negligence**

New York law "frowns upon contract[ual provisions] intended to exculpate a party from the consequences of his own negligence"; such provisions are enforceable but "subject to close judicial scrutiny." *Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979). While such provisions "need not explicitly refer to negligence . . . the intention to contract away liability for one's own negligence must be set forth in specific and unequivocal terms." *O'Brien v. Grumman Corp.*, 475 F. Supp. 284, 290 (S.D.N.Y. 1979). In determining if a contract's terms are set forth unequivocally and with specificity, courts look to "the unmistakable intent of the parties rather than the semantic stereotypes with which an agreement may be phrased." *Hogeland v. Sibley, Lindsay & Curr Co.*, 42 N.Y.2d 153, 158-59 (1977). In other words, "it must appear plainly and precisely that the limitation of liability extends to negligence . . . of the party attempting to shed his ordinary responsibility." *Gross*, 49 N.Y.2d at 107.

When it comes to shielding oneself from liability stemming from gross negligence, it is "well settled that public policy forbids a party's attempt to escape liability, through a contractual clause, for damages occasioned by grossly negligent conduct." *Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 352 (2020). "Gross negligence, when invoked to pierce an agreed-upon limitation

assume that New York law controls, and such implied consent is sufficient to establish choice of law").

of liability in a commercial contract, must smack of intentional wrongdoing or evince a reckless indifferent to the rights of others." *Id*.

**III.**

**DISCUSSION**[4]

**A. Enforceability of the Provision**

1. <u>Negligence</u>

Defendant argues that the Provision is enforceable as to limiting damages stemming from its own negligence because, where the Provision expressly limits its liability "for any loss or damage to a customers [sic] property," the Provision makes explicit that the limitation of liability is applicable to even damages caused by Defendant's own negligence. (*See* ECF 21, Def.'s MSJ at 6-7.) Plaintiff responds that the Provision is unenforceable because "it is an impermissibly broad exculpatory clause that fails to meet the strict standards required to shield a party from its own negligence." (ECF 24, Pl.'s MSJ Opp. at 2.)

---

[4] Both parties spend substantial parts of their briefs addressing whether the Provision is unenforceable because it is unconscionable. Under New York Law, a contract that is unconscionable is unenforceable. *See Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). Whether a contractual provision is unconscionable is a question of law to be resolved by the Court. *See Am. Tel. & Tel. Co. v. N. Y. City Hum. Res. Admin.*, 833 F. Supp. 962, 988 (S.D.N.Y. 1993). "A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made." *Gillman*, 73 N.Y.2d at 10. The procedural unconscionability inquiry focuses on the contract formation process, analyzing such matters as "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id* at 10-11. The substantive unconscionability inquiry "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id*. at 12.

The Provision does not evince the requisite unmistakable intent of the parties to limit, or totally exculpate Defendant from, liability arising from Defendant's negligence. The Provision's limitation of Defendant's liability to $250 "for any loss or damage to a customers [sic] property" does not expressly limit Defendant's liability for its negligence and is too broad and general to make plain that the limitation of liability extends to negligence. *Compare Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 549, 553-54 (1992) (affirming the lower court's holding that a contractual provision limiting a party's liability from its own negligence was enforceable where

---

Plaintiff argues that the Provision "is a paradigmatic example of procedural unconscionability" because it is "in small print at the bottom of [the] invoice, printed in a non-distinct font" and "is not bolded, capitalized, or otherwise set apart." (ECF 24, Pl.'s MSJ Opp. at 3.) He further argues that the Provision's bolded heading of "Damage and Return Policy" does not provide notice that it contains a limitation of liability and characterizes the Provision's "presentation of a boilerplate term" as being "take-it-or-leave-it.'" (*Id.*) Defendant argues that the Provision is not procedurally unconscionable because the Provision appears on the front of the invoice and the text is conspicuously in black ink against a white background, which makes it prominent and easily legible. (*See* ECF 21, Def.'s MSJ at 6-7.)

While the text of the Provision is smaller than most of the text on the invoices, it is still legible, appears on the front of the invoices, and is easily understandable by a layperson. But even if the size and legibility of the Provision weighed in favor of it being procedurally unconscionable, Plaintiff makes no allegations that his bargaining power was limited, that he lacked the appropriate experience or education, or that he was under any sort of pressure to agree to the Provision. *See Passelaigue v. Getty Images (US), Inc.*, No. 16-CV-1362 (VSB), 2018 WL 1156011, at *5 (S.D.N.Y. Mar. 1, 2018) (holding that a provision limiting the defendant's liability to $500 in damages was not procedurally unconscionable where the plaintiff did not allege that her bargaining power, experience, or education were limited or that she was under pressure to sign the contract).

The parties also make arguments in their briefing as to substantive unconscionability, but those arguments are more properly addressed in the context of New York law's handling of contractual provisions that attempt to limit the liability of a party for its own negligence, without inquiry into the procedural unconscionability of such provisions. *See infra* Part III.A.1. In any event, the Provision is unenforceable because, as explained below, it does not set forth in unequivocal terms that Defendant's liability for its negligence is limited and cannot limit Defendant's liability for gross negligence. *See infra* Part III.A.1-2. Accordingly, Defendant's motion is denied on those separate bases.

the provision explicitly stated that the defendant would "not be liable for any of [the plaintiff's] losses or damages . . . caused by . . . negligent acts or omissions by [the defendant]") *and ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 100-02 (2d Cir. 2007) (holding that a provision limiting the liability of the defendant "for any [damage] to the goods resulting from the negligence . . . of [the defendant] for any amount in excess of $50 per shipment" was enforceable as to liability for negligence) *with Hoffman v. Major Model Mgmt., Inc.*, No. 20-CV-6941 (LTS) (JLC), 2022 WL 992795, at *1-2 (S.D.N.Y. Mar. 31, 2022) (holding that a waiver in which the plaintiff released the defendant "from any liability claims, demands, actions, and causes of action whatsoever" did not relieve the defendant of liability for its own ordinary negligence because such language did not express in unequivocal terms the intention of the parties to do so) *and O'Brien*, 475 F. Supp. at 290 (holding that a contract provision did not limit the defendant's liability for his own negligence because a provision that waived and released all rights and remedies stemming from, as relevant here, "any and all . . . duties, obligations and liabilities" was too broad to infer an "unmistakable intent" to limit the defendant's liability for his own negligence).

Defendant further argues that a contractual provision exculpating a party from liability for its negligence must express such an intent in "unmistakable language" only when a party seeks total exculpation from liability, and not, as Defendant seeks here, a limitation of that liability.[5] (ECF 25, Def.'s MSJ Repl. at 2-3.) But this argument fails: New York law applies the

---

[5] In its opening brief, Defendant relies on the same "unmistakable language" standard as Plaintiff from *Gross v. Sweet*, 49 N.Y.2d 102, 107 (1979) to support its position that the Provision contains language that "makes obvious to the lay person" that the Provision limits Defendant's liability for its own negligence to $250. (*See* ECF 21, Def.'s MSJ at 3, 6-7.)

same standard of requiring language reflecting a clear and unequivocal intent both to clauses providing for total exculpation from liability and for partial limitations of liability stemming from a party's negligence. *See ABN Amro Verzekeringen BV*, 485 F.3d at 100 (citing *Uribe v. Merchants Bank of N.Y.*, 91 N.Y.2d 336,341 (1998)) (requiring that a provision limiting a party's liability for its own negligence must reflect an unequivocal intent to do so); *Oliver v. Central Park Sightseeing, LLC*, 95 N.Y.S. 3d 815 (Mem.) (1st Dep't 2019) (same).

Accordingly, the Provision is unenforceable to limit any damages found to have arisen from Defendant's own negligence.

2. Gross Negligence

Plaintiff argues that even if the Provision does limit Defendant's liability for its own negligence, it should be void as against public policy under New York law to the extent it limits Defendant's liability for its own gross negligence, and that because a determination of whether Defendant was grossly negligent is a question of fact that cannot be decided on this record, Defendant's Motion must necessarily be denied. (ECF 24, Pl.'s MSJ Opp. at 5-6.) Under New York law, it is "well settled that public policy forbids a party's attempt to escape liability, through a contractual clause, for damages occasioned by grossly negligent conduct." *Part 60 Put-Back Litig.*, 36 N.Y.3d at 352. "Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing or evince a reckless indifference to the rights of others." *Id*.

Defendant responds that Plaintiff has not brought any claims for gross negligence against Defendant and it cannot now do so in response to its Motion for the sole purpose of raising its public policy argument. (*See* ECF 25, Def.'s MSJ Repl. at 3.) This argument fails because even

when a plaintiff does not bring an independent tort claim for gross negligence, the Court can still conclude that a contractual provision exculpating or limiting the liability of a defendant is void as against public policy if the plaintiff can show that the defendant "breached certain . . . obligations in a grossly negligent manner." *Part 60 Put-Back Litig.*, 36 N.Y.3d at 358; *see also Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.*, No. 14-CV-6640 (FPG), 2016 WL 2622013, at *9 (W.D.N.Y. May 5, 2016) (denying a motion to dismiss where the plaintiff did not bring an independent tort claim for gross negligence against defendant but adequately alleged that the defendant's conduct was grossly negligent which, if true, would render a limitation of liability provision unenforceable); *Abacus Federal Savings Bank v. ADT Sec. Servs., Inc.*, 18 N.Y.3d 675 682-85 (2012) (holding that while the plaintiff did not sufficiently allege an independent tort for gross negligence, it sufficiently alleged "that a breach of contract occurred as a result of gross negligence").

Defendant alternatively argues that there is no evidence on the record or assertion by Plaintiff to meet the elements for a gross negligence claim. (*See* ECF 25, Def.'s MSJ Repl. at 4.) However, Plaintiff notes correctly that in a bailment contract, "the failure to return the object bailed establishes a prima facie case of gross negligence, requiring the bailee to come forward with an explanation." *Voorhis v. Con. Rail Corp.*, 60 N.Y.2d 878, 879-80 (1983); *see also Reed v. Cornell*, 30 N.Y.S.3d 163, 164-65 (2d Dep't 2016) (affirming a jury verdict that the defendant was liable to plaintiff for grossly negligent conduct where the record established that the defendant did not return the plaintiff's property and failed to provide an explanation to rebut the prima facie case of grossly negligent conduct); *Roth v. Black Star Pub. Co. Inc.*, 658 N.Y.S.2d 59, 60-61 (2d Dep't 1997) (reversing the lower court's order and denying the defendant's motion for

summary judgment where the court found that an exculpatory provision upon which the defendant relied was unenforceable as against public policy because the defendant's failure to timely return the bailed property was prima facie evidence of gross negligence, and the defendant's explanation did not rebut the prima facie evidence).

Here, Defendant's own statement of material facts indicates that Plaintiff bailed to Defendant 47 pieces of artwork for framing that Defendant has since been unable to locate. (ECF 22-1, Def.'s Rule 56.1 Statement ¶ 2, 5.) Defendant does not provide any explanation in its briefing to rebut the prima facie case of gross negligence. As such, the record establishes prima facie evidence that Defendant's conduct was grossly negligent, which, on this factual record, Defendant did not rebut. The Provision is therefore unenforceable to limit any damages found to have arisen from Defendant's grossly negligent conduct.

## CONCLUSION

For the foregoing reasons, Defendant's motion for partial summary judgment on damages is **DENIED**. The Provision shall be unenforceable as to limiting any damages found to arise out of Defendant's negligent or grossly negligent conduct.

The parties shall, by **September 18, 2026**, jointly file an amended proposed case management plan on the docket (*see* ECF 9, Discovery Plan Report); if that proposed case management plan provides for all discovery, including expert discovery, to be completed by November 16, 2026, then there will be no need for a case management conference. The proposed case management plan should also indicate when the parties would like to renew

facilitated settlement talks and whether they would prefer Court-annexed mediation or a settlement conference in front of another magistrate judge.

The Clerk of Court is respectfully requested to terminate ECF 21.

Dated: September 8, 2026
New York, NY

SO ORDERED,

______________________________
**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**